# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**TOMMY WHITTEN**

*Plaintiffs,*

**v.**                                                    Case No. _____

**HARRIS COUNTY AND DEPUTY MARK CANNON**

*DEFENDANT.*

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Tommy Whitten ("Plaintiff") respectfully comes before this Honorable Court pursuant to 42 U.S.C 1983[1], *et seq.* complaining of DEFENDANT Harris County, and Deputy Mark Cannon (in his individual capacity). The Defendants acted under color of state law and deprived the Plaintiff of his right to be free from false arrest, malicious prosecution, and excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff specifically alleges and would show unto this Honorable Court the following:

## I.    PARTIES AND ADVERSE PERSON(S)

1.    Plaintiff **TOMMY WHITTEN** is an individual who resides in Guadalupe County, Texas and may be reached by and through counsel of record: Alexander Houthuijzen, 917 Franklin St.

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Suite 230, Houston, Texas 77002 Phone: (713) 600-9902 Fax: (832) 565-9003.

2.      Defendant **HARRIS COUNTY** is a duly-organized county in the State of Texas and may be served with process by serving County Judge, Lina Hidalgo, at 1001 Preston Street, Suite 911, Houston, Texas 77002.

3.      Defendant **DEPUTY MARK CANNON** is a peace officer for the Harris County Sheriff's Office and may be served at the 1200 Baker Street, Houston, Texas 77002.

4.      Defendant DEPUTY MARK CANNON are hereinafter sometimes referred to as "DEFENDANT OFFICER" and along with Defendant HARRIS COUNTY is collectively referred to as "DEFENDANTS."

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4) because the Plaintiff's suit arises under 42 U.S.C. 1983.

6.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1342, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7.      Plaintiff brings this action to redress the unlawful and flagrant excessive force, unlawful

arrest, and malicious prosecution against Plaintiff pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution made applicable to DEFENDANT because of this federal due process violation.

8.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a), to hear and decide claims arising under state law.

9.    Venue is proper in this district court pursuant to 28 U.S.C. §1391(b) because DEFENDANT reside or resided in this district during the relevant time period and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas.

10.   All conditions precedent have been performed or have occurred.

### III.    BACKGROUND AND FACTS RELEVANT TO ALL COUNTS

11.   Plaintiff is a white male. Defendant Mark Cannon is an Africa-American deputy for the Harris County Sherriff's Office.

12.   Defendant HARRIS COUNTY and its DEFENDANT OFFICER, at all times relevant hereto, were employed by and acting on behalf of Defendant HARRIS COUNTY, as officer with Harris County Sheriff's Office.  In addition, DEFENDANT OFFICERS' conduct, actions, and/or inactions, individually and in concert with others, includes their conduct, actions, and/or inactions under: Aiding & Abetting; Assisting & Participating; Concert of Action; Actual Authority; and Ratification.

13.   DEFENDANT OFFICER worked together in joint cooperation and concert of action. With the cooperation, protection, and encouragement of DEFENDANT, DEFENDANT – each of them individually, jointly, and/or collectively hid behind the authority of the law. At all times material

to this Complaint, DEFENDANT was acting under color of state law, ordinance and/or regulation, statutes, custom, and usages of Defendant HARRIS COUNTY and Harris County Sheriff's Office.

14.     In addition, the DEFENDANT' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally violative injuries and damages suffered by Plaintiffs, as set forth more fully below.

15.     HARRIS COUNTY, as a county in the State of Texas, has an ongoing custom and a historical custom of engaging in investigatory tactics and police procedures that involve excessive force, arrests devoid of probable cause, and starting prosecutions which are only maliciously brought to bring harm upon the person prosecuted.

16.     The aforesaid customs include, but are not limited to: (a) executing procedures, purported to be an investigation of crime, but so lacking in logic and meaningful effort as to constitute no meaningful attempt to investigate crime; (b) willfully refusing to engage in proper education so that a peace officer may know how to use force without excessively causing harm to the citizens; (c) charging citizens with crimes to cover up unethical behavior by law enforcement; (d) intentionally charging citizens with crimes that were created by the police to cover up force that was used to severely injure citizens; (e) violating the clearly established right in a free society for a person to be free from unreasonable use of force by an officer,  (f) violating the citizens' clearly established right to due process of law, (g) ratification of the bad acts by the DEFENDANT OFFICER by Harris County essentially stating that the officer did everything by the book and

nothing was done incorrectly when in fact the conduct of the Defendant Officer was excessive to the need and the extremity of their actions should shock the conscience.[2]

17.     DEFENDANT has certain policymakers who are aware of these shortcomings (though described in different terms), have failed to take any meaningful remedial actions, and, through willful blindness and deliberate difference, have endorsed these customs. These policymakers include but are not limited to: Chief Ed Gonzalez and any other persons within the internal affairs division of the Harris County Sheriff's Office whose final decision-making on the officers involved in this case was not to fire them, discipline them, or really do anything at all despite their constitutional violations of Plaintiffs' clearly-established rights. Further policymakers include the not yet known field training officer of DEFENDANT OFFICER whose training is so lacking in any meaningful way that performance of their job could only be classified legally as deliberate indifference. These policymakers are parties to this case.

18.     Through the customs laid out above, DEFENDANT deprived Plaintiffs of rights, privileges, and immunities secured by the United States Constitution. This deprivation included depriving Plaintiffs of Plaintiffs' right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution as well as their right to be free from unreasonable use of force. This deprivation also included depriving Plaintiff's guarantee of equal protection by the law prescribed in the Fourteenth Amendment of the United States Constitution. The particulars of these deprivations are described more fully below.

---

[2] "When a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

19.     On January 10, 2020, Plaintiff was driving peacefully down the street until Plaintiff was pulled over by DEFENDANT Deputy CANNON.



20.     Plaintiff makes a complete stop and DEFENDANT Officer Cannon steps out of his patrol vehicle to approach Plaintiff.

21.     The DEFENDANT Officer approached Plaintiff's car walking with a loaded handgun in his hand, all while Plaintiff had both of his hands up in the air. DEFENDANT Officer pointing handgun at Plaintiffs face, starts to yell at Plaintiff "Let me see your fucking hands." Plaintiff complied to the DEFENDNAT Officer commands.

22.     At that point, Deputy Cannon's only inkling of any wrongdoing by Plaintiff was Plaintiff's refusal to pull over for a  couple of city blocks. Plaintiff was nervous as he was being pulled over

by the police and he was looking for a safe place to bring his car to rest.

23.     Deputy Cannon's immediate reaction was to pull over Plaintiff and approach with his loaded handgun. Deputy Cannon points that loaded gun at Plaintiff. Plaintiff was 2 pounds of pressure away from a much more serious and terrible day.



24.     After DEFENDANT OFFICER yelled at Plaintiff to see his both of his hands, DEFENDANT Officer twisted Plaintiff's arm with excessive force, leaving the Plaintiffs' hand in excruciating pain.   Despite Cannon's later contention that Plaintiff was not wearing a seatbelt, Cannon extricated Plaintiff from the car after Plaintiff removed his seatbelt.





25.      DEFENDANT OFFICER had his BWC (Bodily Worn Camera) microphone off as he was

yelling and cursing at Plaintiff. At a certain point, Cannon switches handheld projectile launchers

and puts his loaded gun away and grabs his taser while twists Plaintiff's arm trying to hurt him

26.     DEFENDANT OFFICER used unacceptable/profane language towards Plaintiff, which was totally unnecessary. DEFENDANT Officer said, "You wouldn't have gotten tased if you would have listened to my FUCKING command and not FUCKING pulled away!" Plaintiff was unaware of what he did wrong, scared of his life, he responded "I did not, Sir." DEFENDANT Officer kept on arguing with Plaintiff back and forth saying "I GAVE YOU ENOUGH WARNINGS TO PULL OVER AND YOU FUCKING DIDN'T!" Plaintiff, unaware of the situation and why the police officer kept yelling, he said peacefully "I was waiting to pull over to a safe area, Sir, and not in the middle of the street."

27.     DEFENDANT Officer Cannon was not being respectful towards Plaintiff. There was no reason to be aggressive in this situation.

28.     Plaintiff, Tommy Whitten was unaware of what crime he had actually committed. In fact, Plaintiff was doing nothing, driving peacefully down the street with his seatbelt on, as the police turned the situation into a bigger issue than necessary. In fact, he was told that the reason for the traffic stop was the fact that Mr. Whitten was not wearing a seatbelt. In the dash camera and body camera from Officer Cannon, a reasonable human being would see that Mr. Whitten was wearing a seatbelt and there was no reason for the traffic stop.

29.     Tommy Whitten was tased and taken to the ground. His crime? Evading arrest in a motor vehicle. Of course, evading arrest requires that wrongdoing be precipitated on an officer's ability to detain and/or arrest a person. In this case, Mr. Whitten's only crime was wearing a seatbelt and trying to find a safe place to pull over at a slow rate of speed. The officer's actions and extreme conduct were unreasonable. A crime was just used to cover up the excessive force the Deputy

Cannon used against Plaintiff.





30.     In the images attached, Mr. Whitten can be seen being spun around by DEFENDANT OFFICER then tased in his chest, thrown into a ditch, scared of his life because the use of excessive force used on him. He sustained a burn wound to his chest and has had to live with the memories of    this    incident    since    it    occurred    over    a    year    ago.





31.     EMS was called to the scene and the taser prongs were removed from Mr. Whitten's ribs. He was then arrested. Mr. Whitten was not given emergency medical treatment despite the excessive force he endured at the hands of Deputy Cannon.

32.     He was later taken to JPC, charged with evading arrest. His case was dismissed because of the atrocious actions of Officer Cannon.

33.     Furthermore, no peace officer should have treated Mr. Whitten, with the same disrespect this peace officer did.

34.     The officers can also be seen jumping on Tommy Whitten and holding him to the ground.





35.    The taser the officer used to gain compliance was used improperly and not according to the law. If a person is not presently committing a crime, an officer does not have reasonable suspicion or probable cause to detain or arrest. Officer Cannon didn't care and proceeded to turn up the fire. He tased Plaintiff. He tased a human without probable cause or reasonable suspicion to suspect the person was a present danger to anybody. Mr. Whitten was not armed. He possessed no weapons.

36.    All of these actions, inactions, omissions, and conduct by the DEFENDANT OFFICERS is attributable to Harris County because of their ratification of the behavior.

**IV.    42 U.S.C. § 1983 CLAIMS/CAUSES OF ACTION/COUNTS – *APPLICABLE TO ALL COUNTS HEREIN***

37.    Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in the preceding paragraphs and pictures incorporated into this pleading  to support Plaintiff's elements, claims, causes of action, and counts.

38.    Pursuant to 42 USC § 1983, DEFENDANT, "under color of state law," "subject[ed] or cause[d] to be subject[ed Plaintiff], a "citizen of the United States," the deprivation of [his] "rights, privileges, or immunities secured by the Constitution and laws," [and] "[should be held liable] to [Plaintiff] in an action at law, suit in equity, or other proper proceeding for redress."

39.    Plaintiff invokes his Constitutional rights, under the 1st, 4th, and 14th Amendments to the United States Constitution – to wit:

    a.    Right to be Free from Unreasonable Searches and Seizures;

    b.    Right to be Free from Excessive Force;

    c.    Right to be Free from False Arrest;

    d.    Failure to Intervene;

    e.    Substantive Due Process Rights (Life, Liberty, and Property); and

    f.    Right to Record Police.

40.    At all times relevant to this incident, Plaintiffs are Mexican immigrants, but are citizens of the United States.

41.    At all times relevant to this incident, Plaintiffs had committed no crime; was not under arrest; their Miranda Rights were not read to them; and Plaintiffs were not a threat themselves or

others.  Inexplicably, Plaintiff, Tommy Whitten, was placed "in custody" and arrested on charges that were later all dismissed.

42.    At all times relevant to this incident, DEFENDANT OFFICERS were duly appointed police officer for Harris County Sheriff's Office and HARRIS COUNTY.

43.    At all times relevant to this incident, DEFENDANT were acting "under color of state law." That is, DEFENDANT OFFICER was (i) on duty, (ii) in uniform, (iii) was using departmental issued and approved equipment, (iv) departmental policies/procedures/customs permitted, prohibited, and/or was unconstitutionally silent on their actions and/or inactions, and HARRIS COUNTY approved its DEFENDANT OFFICER'S actions and/or inactions.

44.    At all times relevant to this incident, Plaintiffs' rights under the 1st, 4th, and 14th Amendment rights/claims arose when Plaintiffs were "seized" – that is:

   a.    when DEFENDANT OFFICER terminated Plaintiffs' freedom of movement through a means intentionally applied[3];

   b.    when Plaintiff, a reasonable person, believed was not free to leave[4];

   c.    when DEFENDANT OFFICER purposely detained Plaintiff but used more force than intended/necessary[5];

   d.    when Plaintiff voluntarily submitted to being put in handcuffs and submitted to DEFENDANT'S authority; and

   e.    when Plaintiff was wrongfully, unlawfully, and falsely arrested, restrained, detained, and handcuffed.

---

[3] *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).

[4] *Breadline v. California*, 551 U.S. 249, 255 (2007).

[5] *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th  Cir. 1998).

46.     Plaintiffs' rights under the 14th Amendment further arose when DEFENDANT created a dangerous situation when it used excessive force, escalated the situation, and failed and/or refused to protect Plaintiff; and, when DEFENDANT restrained Plaintiffs' personal liberty failed and/or refused to protect Plaintiff.

45.     At all times relevant to this incident, DEFENDANT use of force was Constitutionally violative because Plaintiff's arrest was unlawful and excessive force was used.[6]"

46.     At all times relevant to this incident, DEFENDANT– failed to have their audio and visual recording devises on and recording during the incident in question and in direct violation of DEFENDANT'S policies, procedures, practices, and customs, which actions were not punished by and later ratified by HARRIS COUNTY. CANNON writes that "his bodycamera fell off during the physical confrontation with the suspects" which is just another way of saying that the video will magically never appear in this case.

47.     At all times relevant to this incident, HARRIS COUNTY and DEFENDANT DEPUTY CANNON deprived Plaintiff of his right to be free from excessive force – a right secured by the US Constitution. DEFENDANT'S failure to intervene and stop the excessive force further violated this right. DEFENDANT'S lack of training on use of force and excessive force further violated this right. DEFENDANT' failure to supervise and their lack of enforcement of their written audio/visual-recording policy further violated this right by allowing the conduct of excessive force to go on with impunity and ignorance to same.  DEFENDANT'S policy and absence of official

---

[6] *Ramirez v. Martinez*, 716 F.3d 369, 376-377 (5th Cir. Tex. 2013) (holding that a Defendant Officers' force is justified to effectuate an arrest so long as the arrest is lawful and excessive force is not used.).

policy, in the face of clearly known Constitutional law and known violations, inflicted a deprivation of Plaintiff's Constitutional rights.  DEFENDANT'S policy and absence of policy, also established through ratification, inflicted a deprivation of Plaintiff's Constitutional rights. DEFENDANT disregarded a known consequence of risk of serious bodily injury could occur due to their lack of training; vague, ambiguous, and non-specific definitions of use of force; with no written policy on excessive force; and no supervising the use of force through failure in their policy to adhere to audio/visual recording policy inflicted a deprivation of Plaintiff's Constitutional rights.   These described actions and inactions amounted to DEFENDANT'S deliberate indifference and were the "moving force" behind the constitutional violation alleged herein.

48.     Municipal liability is also alleged herein based on HARRIS COUNTY's failure to train, which failure to train was a deliberate indifference to Plaintiff's rights.  Here, HARRIS COUNTY failed to train its employees with respect to a clear constitutional duty/duties that arises in situations that its employees are certain to face.  And, HARRIS COUNTY failed to train its employees with respect to a clear constitutional duty/duties that arise where the need for training is not obvious at the outset, but a pattern of violations put HARRIS COUNTY on notice of the need to train. HARRIS COUNTY had knowledge of the potential for constitutional violations and either authorized, condoned, approved, or assisted in the violation of Plaintiff's constitutional rights. What's more, HARRIS COUNTY and its policymakers "implicitly or explicitly adopted and implemented" the above-described careless and reckless policies or had actual or constructive knowledge of such policies.

49.     At all times relevant to this incident, HARRIS COUNTY and DEFENDANT OFFICER proceeded with conscious and deliberate indifference to the safety and welfare of Plaintiff.

50.     At all times relevant to this incident, Defendant Mark Cannon conduct was "plainly incompetent" and/or was a "knowing violat[ion of] the law."

51.     At all times relevant to this incident, DEFENDANT OFFICER'S conduct was "plainly incompetent" and/or was a "knowing violat[ion of] the law."

52.     At all times relevant to this incident, HARRIS COUNTY and DEFENDANT DEPUTY MARK CANNON engaged in the conduct complained of herein, which conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

53.     Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

### V.     CAUSES OF ACTION — COUNT 1: 42 U.S.C. 1983 UNREASONABLE SEARCHES AND SEIZURES (AS TO ALL DEFENDANT)

54.     Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in the preceding paragraphs, and EXHIBITS 1-16 to support Plaintiff's elements, claims, causes of action, and counts.

55.     During all relevant time periods complained of herein, Plaintiff had a right to be free from unreasonable searches and seizures that was protected by both the Fourth Amendment and Fourteenth Amendment to the United States Constitution. This violation of this right forms the basis of the Plaintiff's claim.

56.     The Plaintiff's right to be free from unreasonable searches and seizures was violated when the events described in this complaint unfolded.

57.     During all relevant time periods complained of herein, Plaintiff was "seized" – that is:

     a.     when DEFENDANT OFFICER terminated Plaintiff's freedom of movement through a means intentionally applied[7];

     b.     when Plaintiff, a reasonable person, believed he was not free to leave[8];

     c.     when DEFENDANT OFFICER purposely detained Plaintiff but used more force than intended/necessary[9];

     d.     when Plaintiff voluntarily submitted to being put in handcuffs and submitted to DEFENDANT' authority; and

     e.     when Plaintiff was wrongfully, unlawfully, and falsely arrested, restrained, detained, and handcuffed.

58.     During all relevant time periods complained of herein, the OFFICER complained of were acting under color of state law because; there was no crime committed by Plaintiff; Plaintiff did not pose a threat to himself or others; there was *no* probable cause to arrest Plaintiff; there was *no* arrest warrant pursued and issued against Plaintiff pursuant to the Texas Code of Criminal Procedure; there was no active resisting of arrest or attempting to evade arrest by flight; DEFENDANT arrested and jailed the Plaintiff but did not do so pursuant to the Texas Code of Criminal Procedure; and DEFENDANT took certain actions to encourage the Harris County District Attorney to accept or otherwise maintain criminal charges against Plaintiff. But for their status as peace OFFICER, DEFENDANT would not have been able to perpetrate the wrongs complained of in this Complaint.

---

[7] *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).

[8] *Breadline v. California*, 551 U.S. 249, 255 (2007).

[9] *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th Cir. 1998).

59.     Additionally, DEFENDANT OFFICER, while acting within his official capacity, deprived Plaintiff of his constitutional rights to be free from unfounded arrest and bad faith prosecution. A claim of false arrest implicates guarantees of the Fourth and Fourteenth Amendments and, therefore, is actionable under § 1983. *See Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299,1305 (5th Cir. 1995); *Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir. 1992); *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir. 1988). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *See Blessing v. Freestone,* 520 U.S. 329, 340, 137 L. Ed. 2d 569, 117 S. Ct. 1353 (1997); *Daniels v. Williams,* 474 U.S. 327, 330, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); *Augustine v. Doe,* 740 F.2d 322, 324-25 (5th Cir. 1984).  Here, and again, there was *no*  probable cause to arrest Plaintiff.  No reasonable person would believe, based on the facts known at the time of arrest, that Plaintiff has committed, is committing, or is about to commit a crime.  And, no report by a credible witness, victim, or person, whether true or untrue, exists to justify probable cause for Plaintiff's false arrest.

60.     The foregoing actions amounted to a clear violation of the Plaintiff's clearly established, Constitutional rights.

61.     Here, Defendant CANNON unlawfully searched, seized, arrested, and prosecuted Plaintiff. Defendant CANNON's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

62.     Here, HARRIS COUNTY, through its Harris County Sheriff's Office, has *Monell* liability

for its constitutionally deficient policy; its constitutionally deficient practice, custom, and usage; its supervisory responsibility failures over DEFENDANT OFFICER; its ratification of Defendant DEFENDANT CANNON's decision, actions, and the basis for his decisions and actions; and for failure to train and supervise, as set forth below.  Defendant HARRIS COUNTY's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

63.     Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

## VI.     CAUSES OF ACTION — COUNT 2: 42 U.S.C. 1983 EXCESSIVE FORCE (AS TO ALL DEFENDANT)

64.     Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support Plaintiff's elements, claims, causes of action, and counts.

65.     Plaintiff further complains of DEFENDANT and would show that the Defendant OFFICER used excessive force against Plaintiff in effectuating his arrest, again, when Plaintiff's only conduct was to attempt to find a safe place to pull over his car that was not private property.

66.     During all relevant time periods complained of herein, the OFFICER complained of were acting under color of state law because; there was no crime committed by Plaintiff; Plaintiff did not pose a threat to himself or others; there was *no* probable cause to arrest Plaintiff; there was *no* arrest warrant pursued and issued against Plaintiff pursuant to the Texas Code of Criminal Procedure; there was no active resisting of arrest or attempting to evade arrest by flight or even

interference with public duties; DEFENDANT arrested and jailed the Plaintiff but did not do so pursuant to the Texas Code of Criminal Procedure; and DEFENDANT took certain actions to encourage the Harris County District Attorney to accept or otherwise maintain criminal charges against Plaintiff. But for their status as peace OFFICER, DEFENDANT would not have been able to perpetrate the wrongs complained of in this Complaint.

67.     Carefully balancing of the nature and quality of the intrusion on Plaintiff's 4th Amendment interest against the countervailing governmental interest at stake, DEFENDANT OFFICER used excessive force against Plaintiffs, pursuant to *Graham v. Connor*, 490 U.S. 386, 395-96 (1989), that was unnecessary in light of the circumstances – to wit:

   a.     when they went hands-on with Plaintiff when Plaintiff was engaged in a lawful, constitutionally-protected act;

   b.     when DEFENDANT OFFICER pushed and/or shoved Plaintiff into a ditch;

   c.     when Cannon tased Plaintiff Tommy Whitten, for nothing at all, except trying to avoid being pushed to the ground for again, doing nothing at all that could even be considered a crime;

   d.     when CANNON used 50,000 volts against Tommy Whitten when he had not committed a crime, it was excessive to the need;

   e.     when CANNON caused neuro muscular incapacitation to Tommy Whitten to detain and arrest him it was excessive to the need.

68.     DEFENDANT'S use of force was objectively unreasonable in light of the totality of the circumstances confronting the OFFICER, without regard to the OFFICER'S underlying intent or motivation[10]. *Graham* at 397.  Specifically, Defendant OFFICER:

---

[10] An officer's intent or subjective motivations may be considered by a fact-finder when evaluating the credibility of his testimony. *Graham* at 399.

     a.     knew that Plaintiff did not present a danger to himself or others;

     b.     affirmatively chose to use force that caused injury to Plaintiff; and

     c.     used force that was excessive to the need.

69.    Plaintiffs' constitutional right to remain free from excessive force was:

     a.     secured to them by the Fourth and Fourteenth Amendments to the United States Constitution;

     b.     violated by Defendant OFFICER;

     c.     clearly established within both the Fifth Circuit and the Southern District of Texas at all times relevant hereto; and

     d.     Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when Defendant OFFICER used excessive force against him, as described above.

70.    At all times relevant hereto, all reasonable police OFFICER would have known:

     a.     law enforcement OFFICER must only use force that is justified by a need;

     b.     the use of force by a law enforcement officer must be objectively reasonable in light of the circumstances;

     c.     Plaintiff had a clearly established right to remain free from an unreasonable use of force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

     d.     the quantum of force used by DEFENDANT OFFICER against Plaintiff was excessive to the need; is impermissible during any detention; was a clear violation of Plaintiff's constitutional rights; and was conduct unbecoming of a police officer.

71.    Here, Defendant OFFICER'S actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

72.     Here, HARRIS COUNTY, through its Harris County Sheriff's Office, has *Monell* liability for its constitutionally deficient policy; its constitutionally deficient practice, custom, and usage; its supervisory responsibility failures over DEFENDANT OFFICER; its ratification of Defendant DETECTIVE OFFICER'S decision, actions, and the basis for his decisions and actions; and for failure to train and supervise, as set forth below.  Defendant HARRIS COUNTY's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

73.     Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

74.     Additionally, Plaintiff seeks punitive damages against DEFENDANT OFFICER because they:

    a.      acted with conscious indifference to the possibility that they would unnecessarily injure Plaintiff under the circumstances;

    b.      acted with reckless or callous indifference to Plaintiffs' federally protected rights;

    c.      acted with deliberate indifference to the likelihood that they would violate Plaintiffs' constitutional rights by using excessive force that was unjustified by the need;

    d.      recklessly trampled on Plaintiffs' clearly established constitutional rights through plainly unlawful conduct;

    e.      acted in a grossly negligent manner;

    f.      knew Plaintiff did not present a danger to himself or other persons in the immediate vicinity;

    g.      acted with conscious indifference to Plaintiffs' rights when they utilized force in excess of any need at the time of such arrest;

h.    acted with conscious indifference to Plaintiffs' rights when they used force that caused serious injuries to Plaintiff; and/or

i.    recklessly trampled on Plaintiffs' clearly established constitutional rights through plainly unlawful conduct.

**VII.    CAUSES OF ACTION — COUNT 3: 42 U.S.C. 1983 FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE[11] (AS TO HARRIS COUNTY)**

75.    Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained passim, and EXHIBIT 1-16 to support Plaintiff's elements, claims, causes of action, and counts.

76.    Defendant HARRIS COUNTY failed to train, supervise, and discipline its employees amounting to a deliberate indifference to the Plaintiffs' constitutional rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).  Deficient employment decisions regarding training, supervision, and discipline can subject a governmental entity to §1983 liability.  *See Brown*, 520 U.S. 397 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1417 (5th Cir. 1996).

77.    At all times relevant, Defendant HARRIS COUNTY had a duty to train, supervise, and discipline their employees and agents, and Defendant HARRIS COUNTY breached those duties.

78.    Defendant HARRIS COUNTY breached those duties, in part, by:

a.    improperly training, authorizing, encouraging, or directing DEFENDANT OFFICER: (i) on proper protections to permit one's clearly established, constitutional right to video record police; (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights;

---

[11] An unconstitutional custom or policy may also be shown by evidence of deficient or inadequate training, supervision, or hiring of law enforcement officers by municipal officials.  *City of Canton v. Harris*, 489 U.S. 378 (1989); *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997); *Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983).

b.   improperly supervising DEFENDANT OFFICER: (i) on proper protections to permit one's clearly established, constitutional right to video record police; (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights;

c.   improperly disciplining DEFENDANT OFFICER: (i) on proper protections to permit one's clearly established, constitutional right to video record police; (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights; and

d.   failing to investigate allegations of: stopping one's clearly established, Constitutional right to videorecord police, improper search and seizure; false arrest; excessive force; failure to intervene; and unconstitutional polices, practices, customs, and usages.

79.   Plaintiff has shown (1) HARRIS COUNTY's training procedures were inadequate; (2) HARRIS COUNTY's policymakers were deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused Plaintiff's injuries and damages. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). Second, even if HARRIS COUNTY's training program does prevent constitutional violations, HARRIS COUNTY is still liable because its policymakers were put on notice that a new program was called for. *Bd. of the County Comm'rs v. Brown*, 520 U.S. at 407-408. "Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (citing *Canton* v. *Harris,* 489 U.S. 378, 390 n. 10 (1989). Third, the U.S. Supreme Court in *Brown* also stated that it did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a governmental entity has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation,

could trigger entity liability, which is the case here.  *Id.* at 409 (citing *Canton v. Harris*, 489 U.S. at 390, and n. 10 ("It may happen that in light of the duties assigned to specific OFFICER or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")).  Here, for example, DEFENDANT OFFICER'S actions were uniform, consistent, in collaboration with one another, and were ratified by all involved.

80.     *Inter alia*, HARRIS COUNTY's lack of training, supervision, and discipline on use of force and excessive force deprived Plaintiff of his clearly established Constitutional rights – rights secured by the US Constitution, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

81.     Defendant HARRIS COUNTY's failure to supervise and their lack of training and lack of enforcement of their written audio/visual-recording policy deprived Plaintiff of his clearly established Constitutional rights by allowing the use of force and excessive force to go with impunity and ignorance to same, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

82.     What's more, Defendant HARRIS COUNTY, a municipal actor, disregarded a known or obvious consequence of its action to not implement a proper policy on permitting and protecting one's clearly established, Constitutional right to video record police, which violation would devolve into unconstitutional search and seizure, arrest, excessive force, and ratification.

83.    What's more, Defendant HARRIS COUNTY was on actual or constructive notice of the need for training, supervision, and discipline because of a pattern of similar unconstitutional acts by its OFFICER occurred within a relevant period of time before the incident.

84.    What's more, Defendant HARRIS COUNTY acted in conscious disregard of the constitutional rights of its residents – namely, Plaintiff – by failing to train, supervise, and discipline its OFFICER.

85.    What's more, the unconstitutional consequences of failing to train are and were so patently obvious to Defendant HARRIS COUNTY that it is liable under § 1983 without proof of a pre-existing pattern of violations.

86.    Defendant HARRIS COUNTY failure to adequately train, supervise, and discipline DEFENDANT OFFICER amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

87.    Defendant HARRIS COUNTY ratification and/or concealment of DEFENDANT OFFICER' actions or omissions amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

88.    This policy is tacitly or overtly sanctioned, as evidenced by the conduct of HARRIS COUNTY failure to train, supervise, investigate, and discipline any of the OFFICER involved in this incident amounting to deliberate indifference to Plaintiff's constitutional rights.

89.    *Monell* liability can be imputed to DEFENDANT because there was a failure to train the police OFFICER in this case in the continuum of using force, making arrests based upon probable cause, and the First Amendment requirements that citizens can video record police in public. In the present case, there is a pattern of this sort of conduct evidenced by the extremity with which

the situation became extreme and the DEFENDANT OFFICER were calling K-9 units and multiple police units to the scene. Plaintiff prevails on any question of law concerning whether *Monell* liability can be imputed to the city for one constitutional violation. *Brown v. Bryan County, OK*, 219 F.3d 450 (5th Cir. 2000).

90.     DEFENDANT' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

91.     Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

## VIII.   CAUSES OF ACTION — COUNT 4: 42 U.S.C. 1983 VIOLATION OF DUE PROCESS (AS TO ALL DEFENDANT)

92.     Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in paragraphs 13-14, 15-40, 41-57, and EXHIBIT 1 to support Plaintiff's elements, claims, causes of action, and counts.

93.     Plaintiff's constitutional right to due process as a free citizen was:

  a.     secured to him by the Fourteenth Amendment to the United States Constitution

  b.     violated by DEFENDANT OFFICER at the scene of the incident, and by Defendant HARRIS COUNTY; and

  c.     clearly established within both the Fifth Circuit and the Southern District of Texas

94.     On April 12, 2020, DEFENDANT violated Plaintiffs' Fourteenth Amendment right to Due Process when they:

  a.     used unnecessarily excessive force;

b.     caused serious injuries to Plaintiffs;

c.     used excessive force without furthering any legitimate penological interest;

d.     used said excessive force in bad faith, maliciously, and recklessly; and

e.     by using excessive force that was objectively unreasonable under the circumstances.

95.     DEFENDANT' conduct was:

a.     deliberate and purposeful;

b.     was plainly incompetent;

c.     a knowing violation of the law;

d.     predicated upon the patently unreasonable belief that the conduct herein was reasonable;

e.     an intentional violation of the law;

f.     consciously and deliberately indifferent to Plaintiffs' constitutional rights and safety;

g.     performed while knowingly disregarding the obvious risk that the above actions would designedly result in his inability to comply with any officer's verbal commands or physical forces

h.     a significant threat to Plaintiffs' clearly established constitutional right to remain free from Due Process violations and excessive force; and

i.     evidences unreasonable misunderstandings of their respective powers and responsibilities.

96.     No reasonable officer could ever believe that Plaintiffs' conduct herein warranted the reckless, malicious, bad faith, and deliberately indifferent abuse perpetrated by DEFENDANT herein.

97.     Plaintiff seeks punitive damages against DEFENDANT OFFICER  because they:

a.     knew they lacked constitutional authority to treat Plaintiffs the way they did under the circumstances herein;

b.     acted with conscious indifference to the possibility that they were performing unreasonably unlawful acts;

c.     acted with reckless or callous indifference to Plaintiffs' federally protected rights;

d.     recklessly violated Plaintiffs' clearly established constitutional rights to remain free from Due Process violations; and

e.     acted in a grossly negligent manner.

98.     Defendant HARRIS COUNTY and its DEFENDANT OFFICER, namely Defendant CANNON, used excessive force against Plaintiffs – to wit:

a.     when they went hands-on with Plaintiff when Plaintiff was engaged in a lawful, constitutionally-protected act;

b.     when they flung and pushed and/or shoved Plaintiff into a ditch;

c.     when CANNON tased Plaintiff Tommy Whitten, for nothing at all, except trying to avoid being pushed to the ground for again, doing nothing at all that could even be considered a crime

d.     when CANNON used 50,000 volts against Tommy Whitten when he had not committed a crime, it was excessive to the need

e.     when CANNON caused neuro muscular incapacitation to Tommy Whitten to detain and arrest him it was excessive to the need;

99.     Defendant HARRIS COUNTY and its DEFENDANT OFFICER, namely Defendant CANNON'S, conduct was "deliberate decision to deprive a person of life, liberty, or property."

100.    Defendant HARRIS COUNTY and its DEFENDANT OFFICER, namely Defendant CANNON'S action "can properly be characterized as conscience shocking, in a constitutional

sense[12]" and/or was recklessness, gross negligence, or deliberate indifference to the rights of Plaintiff.

101.    Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when DEFENDANT used excessive force against Plaintiff, as described above.

102.    Defendant HARRIS COUNTY implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices.  These included, among other things, allowing Defendant HARRIS COUNTY and its DEFENDANT OFFICER, namely DEFENDANT CANNON, to unconstitutionally and excessively use force in violation of the United States Constitution.

103.    Defendant HARRIS COUNTY failure to adequately train, supervise, and discipline DEFENDANT OFFICER amounted to deliberate indifference to Plaintiff's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

104.    Defendant HARRIS COUNTY's ratification and/or concealment of DEFENDANT OFFICER' actions or omissions amounted to deliberate indifference to Plaintiff's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

---

[12] Conduct that "shocks the conscience" is the type that violates the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172-73 (1952).  It is also conduct that is so brutal and offensive that it does not comport with "traditional ideas of fair play and decency." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "shock the conscience" standard is found "at the ends of the tort law's spectrum of culpability." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  As a result, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to give rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

105.    What's more, Defendant HARRIS COUNTY's continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability.  *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (U.S. 1997).

106.    DEFENDANT' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

107.    Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

### IX.    CAUSES OF ACTION — COUNT 5: TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. TEXAS TORT CLAIMS ACT (AS TO HARRIS COUNTY)

108.    Plaintiff incorporates by reference, as though set forth fully herein, the background and factual allegations contained in the preceding paragraphs and EXHIBITS 1-16 to support Plaintiff's elements, claims, causes of action, and counts.

109.    On January 10, 2020 and all times material hereto, DEFENDANT OFFICER were employees of Defendant HARRIS COUNTY.

110.    All acts or omissions of DEFENDANT OFFICER mentioned herein were committed within the scope of employment and therefore Defendant HARRIS COUNTY, as principals, are liable for the actions of its agent(s), DEFENDANT OFFICER, under the doctrine of *respondeat superior.*

111.    Defendant HARRIS COUNTY is not immune from liability or suit regarding counts pertaining to violations of 42 U.S.C. §1983.

112.    As to Defendant HARRIS COUNTY, the Texas Legislature has waived immunity under the Tort Claims Act because Plaintiff's injuries were proximately caused by the use or condition of personal property (the Harris County issued taser) – namely, Plaintiff's injuries, inter alia, were caused by: DEPUTY CANNON when he tasered Plaintiff, Tommy Whitten causing serious injuries which required immediate medical attention.

113.    Defendant HARRIS COUNTY would be liable were they private persons, and no exception to waiver of immunity applies because the aforementioned actions violated 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution.

114.    Therefore, should the DEFENDANT be found liable for counts in this cause, Plaintiff demands that, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(1), *et seq.*, Defendant HARRIS COUNTY pay any judgment obtained against DEFENDANT.

115.    No notice of claim is necessary here, as Plaintiff gave notice of his rights, the violation of those rights, and his intent to seek legal redress to DEFENDANT OFFICER.

116.    Here, (1) Defendant HARRIS COUNTY is a governmental unit; (2) the act that Defendant HARRIS COUNTY is sued for is governmental; (3) Defendant HARRIS COUNTY's immunity from suit is waived; (4) Defendant HARRIS COUNTY's immunity from liability is waived; (5) there are no exceptions to waiver of Defendant HARRIS COUNTY's immunity from liability; and (6) presuit notice was provided and not necessary. TEX. CIV. PRAC. & REM. CODE §101.021(1); DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex. 1995).

117.    DEFENDANT' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully above.

118.    Plaintiff seeks unliquidated damages within the jurisdictional limitations of this court.

## X.    **JURY DEMAND**

119.    Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## XI.    **DAMAGES**

120.    As a result of the actions and circumstances described above, Plaintiff has suffered injuries and damages including but not limited to one or more of the following:

a.    Nominal Damages.

b.    Actual Damages.

c.    Compensatory Damages.

d.    Past and future physical injuries, impairment, inconvenience, and disfigurement;

e.    Past and future pain and suffering;

f.    Past and future mental anguish, emotional distress, anger, and humiliation;

g.    Past and future economic losses and loss of earning capacity;

h.    Past and future medical expenses (including counseling and mental health treatment);

i.    Presumed Damages;

j.    Attorney's Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq*.;

k.      Expert Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq.*;

l.      Punitive Damages, as to DEFENDANT OFFICER;

m.      Unliquidated damages within the jurisdictional limits of this court; and

n.      Pre-judgment and post-judgment interest.

### XII.   <u>ATTORNEY'S FEES</u>

121.   Plaintiff is entitled to recover attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988.

### XIII.   <u>PRAYER FOR RELIEF</u>

122.   For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against DEFENDANTS consistent with the relief requested herein and award the Plaintiff actual damages and punitive damages in an amount to be determined by Plaintiff's jury, along with costs of this action including reasonable attorney fees, and for any and all other relief, at law or in equity, to which Plaintiff may show himself justly entitled

Dated: August 10, 2021

Respectfully Submitted,
*/S/ Alexander J. Houthuijzen*
**Alexander J. Houthuijzen**
Texas Bar No. 24101224
Fed ID No. 3083690
917 Franklin St. 230
Houston, Texas 77002
(713) 600-9902
(832) 565-9003
alex@alexthedefender.com
**ATTORNEY FOR PLAINTIFF**

Whitten v. Harris County and Deputy Cannon
Original Complaint
Page 39 of 39